IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATURE'S ONE, INC., | : | |
| | : | Case No. 2:15-cv-2820 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| SPRING HILL JERSEY CHEESE, INC., | : | |
| | : | |
| Defendant/Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WD LOGISTICS, L.L.C., *et al.*, | : | |
| | : | |
| Third-Party Defendants. | : | |

## OPINION & ORDER

This matter is before the Court on Third-Party Defendant WD Logistics, L.L.C.'s ("WD Logistics") Motion for Summary Judgment (Doc. 85) and Motion to Strike Evidentiary Submissions. (Doc. 132.) For the reasons set forth below, WD Logistics' Motion for Summary Judgment is **GRANTED**. Because WD Logistics is entitled to summary judgment even if the Court considers the evidence WD Logistics deems improper, the Motion to Strike is **MOOT**.

### I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Nature's One is a central Ohio company that develops, markets, manufactures, and sells organic medical nutrition products, including various formula and milk products consumed primarily by infants and children. (*See* Am. Compl., Doc. 17, ¶ 7.) Defendant Spring Hill, located in Petaluma, California, is a supplier of milk products to manufacturers across the United States. (Spring Hill Countercl., Doc. 23, ¶ 2.) In 2014, Nature's One began purchasing organic nonfat dry milk ("NFDM") from Spring Hill. (Doc. 17 ¶ 9.) Nature's One requires its

suppliers to provide it with NFDM that is free of egg allergens, and Spring Hill was aware of this requirement. (*Id.*)

In April 2015, Spring Hill ordered five shipments of milk from Triple T Dairy Commodities, Inc. ("Triple T"). (Am. Third-Party Compl., Doc. 34, ¶ 6.) Triple T then hired WD Logistics[1] to arrange for the milk to be transported from Texas to California. (*See* Doc. 34 ¶ 12.) WD Logistics hired drivers to transport the milk—this was its sole role. WD Logistics is not an interstate motor carrier, nor did it have a contractual relationship with Nature's One or Spring Hill. (Honeycutt Decl. ¶¶ 4, 11.) WD Logistics did not supply, manufacture, sell, label, distribute, or market the milk. (*Id.* ¶ 5.) WD Logistics did not arrange for any further shipment of the milk after it was delivered to Spring Hill in California. (*Id.* ¶ 8.)

Nature's One ultimately discovered that its milk was contaminated with egg allergens, rendering its infant formula unfit for sale. Nature's One therefore sued Spring Hill for damages related to the contamination (*see* Doc. 34 ¶ 1), and Spring Hill brought a third-party complaint against WD Logistics, among others. (*See generally id.*) Six of Spring Hill's ten claims for relief in its third-party complaint are brought against WD Logistics. (*Id.* ¶¶ 15–40.) In its first, fourth, fifth, and sixth claims for relief, Spring Hill alleges that WD Logistics' negligence was the proximate cause of the milk's contamination. (*See id.* ¶¶ 16, 25, 30, 39.) Spring Hill also brings claims for indemnity and contribution against WD Logistics. (*See id.* ¶¶ 18–21.)

WD Logistics moves for summary judgment on Spring Hill's third-party complaint. (Doc. 85.) This motion is ripe and ready for adjudication. In addition, WD Logistics moves to strike certain of Spring Hill's evidentiary submissions in its memorandum in opposition to WD

---

[1] WD Logistics is authorized by the Federal Motor Carrier Safety Administration ("FMCSA") as a broker to arrange motor carrier transportation for compensation. (Declaration of Drew Honeycutt ("Honeycutt Decl."), Ex. 1 to WD Logistics' Mot. for Summ. J., Doc. 85-1, ¶ 3.)

Logistics' motion for summary judgment. (*See* ECF No. 132.) The motion to strike, too, is ripe for this Court's review.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proof on both points. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). In determining whether this standard is met, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Crouch v. Honeywell Int'l, Inc.*, 720 F.3d 333, 338 (6th Cir. 2013). As always, this inquiry turns on "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The mere existence of a scintilla of evidence does not suffice to survive a motion for summary judgment; rather, there must be evidence on which a jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## III. LAW & ANALYSIS

WD Logistics moves for summary judgment on the grounds that Spring Hill's state-law claims are preempted by the Federal Aviation Administration Authorization Act ("FAAAA") and that they fail on the merits because WD Logistics bears no liability for the contaminated milk. Because the Court finds that Spring Hill's claims are preempted, it need not address the merits of each of Spring Hill's claims.

### A. Spring Hill's Negligence Claims Are Preempted by the FAAAA.

In 1994, Congress passed the FAAAA as part of deregulating the trucking industry. The law preempts all state laws "related to a price, route, or service of . . . any motor carrier . . . or broker, . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Supreme Court has concluded that the phrase "related to" has an "expansive sweep," and its ordinary meaning is broad: "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Cerdant, Inc. v. DHL Express USA, Inc.*, No. 2:08-cv-186, 2009 WL 723149, at *3 (S.D. Ohio Mar. 16, 2009) (Marbley, J.) (citing *Morales v. Trans World Airlines*, 504 U.S. 374, 384–85 (1992) (interpreting the preemption provision of the Airline Deregulation Act, after which the FAAAA's language was patterned)).

As set forth above, WD Logistics is an authorized broker; it is not an interstate motor carrier. (Honeycutt Decl. ¶¶ 3–4.) A broker is a "person, other than a motor carrier . . . that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).[2] The law is clear that negligence claims against brokers are preempted under the FAAAA. *See, e.g.*, *AIG Europe Ltd. v. Gen. Sys., Inc.*, No. RDB-13-0216, 2014 WL 3671566, at *4 (D. Md. July 22, 2014) (FAAA preempted negligence claim against broker who allegedly failed to select motor carrier with sufficient insurance because the claim "clearly relates to the service provided by a broker); *Ameriswiss Tech., LLC v. Midway Line of Ill., Inc.*, 888 F. Supp. 2d 197, 206–07 (D.N.H. 2012); *Huntington*

---

[2] By contrast, a "motor carrier" means "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).

*Op. Corp. v. Sybonney Express, Inc.*, No. H-08-781, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2010).[3]

WD Logistics argues that, "[a]lthough Spring Hill has brought six different claims against WD Logistics, each claim essentially alleges that WD Logistics acted negligently and that this negligence attributed to the alleged contamination giving rise to this suit." (Doc. 85 at 8.) In its first, fourth, fifth, and sixth claims for relief, Spring Hill alleges that WD Logistics' *negligence* was the proximate cause of the milk's contamination. (*See* Doc. 34 ¶¶ 16, 25, 30, 39.) Spring Hill's indemnity and contribution claims are also require a showing of WD Logistics' negligence in order to succeed. With regard to indemnity, "[i]ndemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence." *Reynolds v. Physicians Ins. Co. of Ohio*, 623 N.E.2d 30, 31–32 (Ohio 1993). That is, Spring Hill could not recover on its indemnification claim if both it and WD Logistics were negligent; in order to succeed, Spring Hill must establish WD Logistics' negligence, that it has been imputed to Spring Hill, and that Spring Hill has been required to pay for the effects of that imputed negligence. *See Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253 256 (Ohio 1987).

Similarly, "if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them." Ohio Rev. Code § 2307.25. For a contribution claim to go forward, there need not be a judgment against the contribution defendant, but the contribution defendant must be "liable in tort" for the

---

[3] Spring Hill claims that *Litchfield v. United Parcel Serv., Inc.*, 136 F. Supp. 2d 756 (S.D. Ohio 2000) stands for the proposition that state common law claims are not subject to complete preemption under the FAAAA, and therefore its negligence claims survive. (*See* Doc. 119 at 5.) To the contrary, *Litchfield* noted only that *some* types of state actions may affect "rates, routes, or services" in "too tenuous, remote or peripheral" a manner as to have a preemptive effect, and that a conversion claim may be one such action. *See Litchfield*, 136 F. Supp. 2d at 760.

5

injury (here, negligence) giving rise to the contribution claim. *See MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.*, 685 N.E.2d 529 (Ohio 1997). Because all of Spring Hill's claims against WD Logistics allege negligence in WD Logistics' performance of its transportation services, all of Spring Hill's claims against it are preempted under the FAAAA.

According to Spring Hill, a genuine issue of material fact exists as to "[w]hether and to what extent WD Logistics acted as more than a mere broker," which precludes summary judgment based on FAAAA preemption. (Doc. 119 at 5.) Spring Hill correctly notes that whether a company is a broker or a carrier "is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." *Hewlett-Packard Co. v. Brother's Trucking Enters., Inc.*, 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005). Thus, the mere fact that WD Logistics avers by declaration that it served only as a broker, not a motor carrier, does not automatically entitle it to summary judgment. However, Spring Hill fails to create an issue of material fact about WD Logistics' status sufficient to defeat summary judgment. Spring Hill refers to the fact that one of the shipping documents in discovery shows that WD Logistics shares "the same principal office address" as Western Dairy Transport, a federally licensed motor carrier that was a carrier for one of the deliveries of milk brokered by WD Logistics. (*See* Doc. 119 at 3.)

But even if WD Logistics held itself out to the public as a motor carrier by way of some relationship with Western Dairy Transport, by its plain terms, the FAAAA preempts state-law claims "related to a price, route, or service of *any motor carrier*" in addition to brokers. 49 U.S.C. § 14501(c)(1) (emphasis added). It is therefore immaterial for purposes of preemption whether WD Logistics is a broker or a motor carrier. Moreover, WD Logistics correctly observes that nowhere in the amended third-party complaint does Spring Hill allege any claim of

motor carrier liability against WD Logistics or that WD Logistics was holding itself out as a motor carrier. (Doc. 131 at 8.) Because a party cannot rely on "wholly new allegations of wrongdoing to resist a motion for summary judgment," Spring Hill's argument that WD Logistics is a motor carrier rather than a broker is insufficient to defeat summary judgment for this independent reason. *Guiffre v. Local Lodge No. 1124, United Steelworkers of Am.*, 940 F. 2d 660 (6th Cir. 1991) (unpublished table decision); *see also Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).

### B. Spring Hill's Contract-Based Claims Against W.D. Logistics Fail.

The FAAAA does not preempt state-law breach of contract claims, but courts are "limited to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Cerdant*, 2009 WL 723149, at *4. While Spring Hill is correct that the FAAAA does not preempt garden variety breach of contract claims, this does not save a breach of contract claim that it did not plead. (*See* Doc. 34 at 9–11 (alleging contractual relationship only between Spring Hill and Triple T).)

In an effort to save its purported breach of contract claim after failing to allege the existence of a contract between Spring Hill and WD Logistics and to plead a breach of contract claim against WD Logistics, Spring Hill asserts in its opposition for the first time that WD Logistics is a third-party beneficiary of its contract with Triple T. (*See* Doc. 119 at 6.) As stated above, however, a party cannot defeat summary judgment by raising novel allegations in its opposition. *Guiffre*, 940 F. 2d at 660; *see also Meikle v. Edward J. DeBartolo Corp.*, No. 00-CA-58, 2001 WL 1468563, at *5 (Ohio Ct. App. Nov. 7, 2001) (dismissing third-party beneficiary claim that was not pleaded in complaint). For these reasons, Spring Hill's supposed breach of contract claims against WD Logistics fail as a matter of law.

7

## III. CONCLUSION

For the foregoing reasons, WD Logistics' Motion for Summary Judgment is **GRANTED**. The Motion to Strike is therefore **MOOT**.

**IT IS SO ORDERED.**

               <u>s/ Algenon L. Marbley</u>
               **ALGENON L. MARBLEY**
               **UNITED STATES DISTRICT JUDGE**

**DATED: September 29, 2017**